J. E. MAMIYE & SONS, INC., Plaintiff,

v.

UNITED STATES, Defendant.

C.D. 4878.

Court No. 78–6–01086.

United States Customs Court.

Oct. 31, 1980.

Mandel & Grunfeld, New York City (Steven P. Florsheim and Robert B. Silverman, New York City, at the trial and on the briefs), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, New York City (Jerry P. Wiskin and Madeline B. Kuflik, New York City, at the trial; Jerry P. Wiskin, New York City, on the brief), for defendant.

FORD, Judge:

This action presents for determination the proper classification of certain tote bags which were classified for duty purposes under item 389.60 (or item 389.62)[1] of the Tariff Schedules of the United States, as modified by T.D. 68–9, and assessed with duty at 25 cents per pound plus 15 per centum ad valorem.

Plaintiff contends said tote bags are properly dutiable at 20 per centum ad valorem as either handbags or, alternatively, as luggage of textile materials as provided for under item 706.24, TSUS, as modified by T.D. 68–9.

The pertinent statutory provisions read as follows:

Tariff Schedules of the United States:

Schedule 3, Part 7, Subpart B:

Subpart B headnote:

   1. This subpart covers articles, of textile materials, not covered elsewhere in the tariff schedules.

---

1. Item 389.60, TSUS, was renumbered item 389.62 by Executive Order 11974, dated February 25, 1977.

Subpart B headnote:—Continued

\* \* \* \* \* \*

Articles not specially provided for, of textile materials:

\* \* \* \* \* \*

Other articles, not ornamented:

\* \* \* \* \* \*

Of man-made fibers:

\* \* \* \* \* \*

389.60    Other . . . . . . . . . . . . . . . . . . 25¢ per lb. + 15% ad val.

### Schedule 7, Part 1, Subpart D:

Subpart D headnotes:

\* \* \* \* \* \*

2. For the purposes of the tariff schedules—
   (a) the term *"luggage"* covers—
      (i) travel goods, such as trunks, hand trunks, lockers, valises, satchels, suitcases, wardrobe cases, overnight bags, pullman bags, gladstone bags, traveling bags, knapsacks, kitbags, haversacks, duffle bags, and like articles designed to contain clothing or other personal effects during travel; and
      (ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, gun cases, occupational luggage cases (physicians', sample, etc.) and like containers and cases designed to be carried with the person, except handbags as defined herein;
   (b) the term *"handbags"* covers pocketbooks, purses, shoulder bags, clutch bags, and all similar articles, by whatever name known, customarily carried by women or girls, but *not including luggage or flat goods as defined herein or shopping bags;*

\* \* \* \* \* \*

Luggage and handbags \* \* \*:

\* \* \* \* \* \*

Of textile materials (except yarns, of paper), whether or not ornamented:

\* \* \*    Wholly or in part of braid . . . \* \* \*

\* \* \* \* \* \*

Other:

Of vegetable fibers and not of pile or tufted construction:

\* \* \* \* \* \*

706.24    Other . . . . . . . . . . . . . . 20% ad val.

The record consists of the testimony of eight witnesses called on behalf of plaintiff and ten called on behalf of defendant. Fifty-three exhibits were received in evidence, twenty-seven for plaintiff and twenty-six for defendant.

Mr. Jack Mamiye, president of plaintiff corporation, testified that he had been importing and selling handbags for approximately thirty years.

The line of merchandise handled by plaintiff consists of shoulder bags, tote bags and evening bags, which cover approximately 2,500 to 3,000 styles of which there are 1,000 styles of tote bags.

The imported tote bags consist of many variations in sizes, colors and materials. Some of the tote bags had open tops, while others had zippers or snap closures, and some had inside or outside pockets. Mr. Mamiye testified that the letter designations on the invoices of the representative exhibits 1 to 5, indicated the various business concerns for whom they were imported. For example, "LG" represents Literary Guild, and "DB" represents Doubleday Book Club, etc.

Merchandise, such as exhibits 1 to 5, was sold to various premium customers and other accounts without the graphics. The latter tote bags were sold to handbag departments of department stores, notion departments and cosmetic departments. The imported merchandise is commonly referred to as handbags, tote bags, shoulder bags and cosmetic bags, as well as fashion handbags, fashion totes and shoulder totes.

The witness testified that a tote bag with or without a zipper closure is still a tote bag or a handbag. The absence or presence of a closure is due solely to the customer's desire. The witness testified exhibits 1 to 5 were premium items, and he could only guess that they were "probably sold like a gift with a purchase, I guess. I don't know."

The second witness called on behalf of plaintiff was Lou Nathan, an instructor at the New York Fashion Institute of Technology, where he teaches courses in handbag design and pattern making. Mr. Nathan is also a consultant to the handbag industry, and his duties involve supervision of hand-

bag design, consulting on manufacturing operations and quality control.

The witness has been in the handbag business since 1930, having owned and operated a number of handbag manufacturing companies, as well as being employed by various handbag manufacturers. Mr. Nathan has been involved in every facet of handbag design and manufacture and has personally designed and manufactured tote bags throughout his years in the handbag industry. He has written trade publication articles on the subject of handbags, as well as a textbook on handbag design and technology. He was familiar with the use of handbags in the United States and the manner in which handbags were sold at the retail level.

Mr. Nathan defined a handbag as something that women wear to carry their personal possessions while they are away from home. Based upon his experience, the witness testified that handbags fall into various price categories, such as, low, medium or high. Handbags are also categorized by type, such as, frame bags, shoulder bags, underarm bags, clutch bags, box bags, evening bags, tote bags, travel bags and hobo bags. In the opinion of the witness, a tote bag is a handbag utilized as an auxiliary handbag and is used to carry various objects which do not fit into a woman's regular handbag. It is, in effect, an auxiliary handbag. While a tote bag may be utilized for carrying purchases, such use is secondary because it is, in effect, a second handbag. By the same token, the witness testified that women may carry purchases in their regular handbag. In the opinion of Mr. Nathan tote bags are not sturdy versions of shopping bags and are not intended or designed to imitate shopping bags.

According to witness Nathan the concept of fashion plays an important role with respect to handbags, including tote bags. Fashion refers to color combinations, shape, and the manner in which the bag is carried, such as, hand, arm, or shoulder. From the standpoint of construction and use, exhibits 1 to 5 are similar to pocketbooks, purses, shoulder bags and clutch bags.

On cross-examination, Mr. Nathan stated that women use handbags for carrying valuables and generally desire some form of security device in their primary handbag. The witness defined a shopping bag as a large paper or plastic bag, given away in a retail store. Such bags are used for carrying bulky purchases and are not used by women as a secondary handbag.

Mr. Nathan testified that he attended trade shows and that tote bags are displayed by handbag manufacturers as part of their collection.

Next called on behalf of plaintiff was Mr. Sharif El Fouly, manufacturer and designer of handbags, operating under the name of "Sharif's Design, Ltd." The witness also teaches courses in handbag design, construction and pattern making at the Parsons Fashion Center, which is connected with The New School in New York City. After his arrival in the United States, he was employed by a handbag manufacturer from 1972 to 1978. The duties of this well-informed witness included design, pattern making, quality control, buying of raw materials, as well as being in contact with retail buyers.

Prior to immigrating to the United States, the witness was involved in his family's handbag and luggage manufacturing business in Egypt. He obtained a degree in design from Offenbach in Germany and worked as a designer in the handbag industry in Europe. Witness El Fouly taught courses in handbag design in Lebanon, Jordan and Morocco. He presently holds five foreign patents in handbag design. Mr. El Fouly regularly attends handbag trade shows and visits retail handbag establishments to observe how handbags are sold and merchandised. He has observed the uses of handbags throughout the United States since his arrival in this country in 1970. According to the witness, the use of a handbag does not vary geographically. Handbags are used mostly by women to carry their belongings, and it is not uncommon for women to carry two handbags at one time.

The witness has personally designed, manufactured and sold tote bags, which come in all sizes, with and without closures. According to the witness some tote bags have inside or outside pockets and some do not. Such articles are made from various materials including leather, fabric and plastic. Tote bags, in his opinion, are handbags and are usually sold and displayed in the handbag department of department stores. Larger tote bags are sold in the luggage department. Exhibits 1 to 5 are commonly referred to as tote bags and are not referred to as shopping bags. The tote bags, such as exhibits 1 to 5, are fashion bags because the colors, styles, designs and proportions are geared to current fashions.

The witness was of the opinion that exhibits 1 to 5 are similar to pocketbooks, clutch bags, purses and shoulder bags from the standpoint of construction and use.

On redirect examination witness El Fouly stated that tote bags can be used for shopping because they are usually large. However, the use of a handbag for carrying purchases does not change the identity from a handbag to a shopping bag since most large handbags can be used for shopping.

Deborah Patterson was then called on behalf of plaintiff. She testified that she had used tote bags similar to exhibits 1 to 5 for approximately five or six years. Such bags were used to carry her belongings, such as keys, money and a change of clothes. On occasion she carried a second handbag in addition to her tote bag. The witness obtained a tote bag identical to exhibit 8 with the purchase of cosmetics in Bloomingdales, where it was placed in a paper bag and stapled shut. The witness further stated the cosmetics were not placed in the tote bag.

Michael Dimin, a wholesaler and distributor of plain and printed polyethylene shopping bags, was called by plaintiff. He defined a shopping bag as " * * * a bag whose primary function would be the transportation of goods from a point of sale to a point of use." Shopping bags are sold or given away by retailers and are used by both men and women. According to witness Dimin shopping bags fall under the category of packaging material, and, in his opinion, exhibits 1 to 5 are not shopping bags and are not competitive with his shopping bags.

Annemarie Androsiglio, a fashion coordinator for a women's wear manufacturer, was called on behalf of plaintiff and testified that she used a tote bag to carry her personal effects, such as, credit cards, keys, wallet, newspaper, and a folded shopping bag. She stated that while she placed purchases in her tote bag along with her personal effects, she did not use a tote bag to carry purchases only. She also carried on occasion an additional handbag along with her tote bag. In her opinion, a shopping bag is one used to carry merchandise home from a store and, once it served this function, she considered it to be a disposable item.

Rose Ann Avallone, called on behalf of plaintiff, testified that she had obtained exhibit 22 from the Doubleday Book Club. She stated that she used exhibit 22 while going to and from work, to carry personal effects such as an umbrella, a makeup case, hairbrush, a book or magazine, and sometimes her lunch. On occasion she has used exhibit 22 to carry a small purchase, but she has never used a tote bag for shopping or carrying only purchases. The witness further stated that she used a second handbag while going to and from work so she could carry all the personal effects that would not fit into one handbag. Witness Avallone stated that for leisure activities she used a different tote bag, in which she put all her personal effects, including keys, wallet and money, and ordinarily did not carry another pocketbook on those occasions. According to the witness a shopping bag is primarily an inexpensive paper or plastic bag used to carry purchases home from a store.

Frieda Koren, an owner of a discount retail store in New York City, was called by plaintiff. Approximately 80 percent of her business consists of the sale of handbags and luggage. Witness Koren, prior to coming to the United States, designed handbags in her native country, Israel. She defined a

handbag as a bag which is fashionable and stylish, that is carried by women, and is made of a nice material and looks nice. According to witness Koren exhibits 1 to 5 are handbags, and she sold bags that are identical to exhibits 1, 3 and 5 in her store. She further stated that she had sold exhibit 5 with and without the "LG" logo. The witness stated that she recognized no distinction between handbags and tote bags and that in transactions with retail customers and suppliers, exhibits 1 to 5 are commonly referred to as handbags or tote bags. Witness Koren uses tote bags as second handbags to carry personal effects such as money, lunch and keys. In her store she has sold paper and plastic shopping bags to customers desiring to carry out their purchases in a bag.

Defendant called Ann Sanchak as its first witness. She testified she did not own a bag similar to exhibits 1 to 5. Defendant offered, and it was received in evidence, exhibit N, which is the shopping bag belonging to Miss Sanchak, who testified she used said exhibit regularly for shopping. The witness further stated that she carries a handbag in addition to exhibit N, and that her valuables are carried in the handbag. When purchasing a handbag, she always selects one which has a zipper and compartments or some secure closure. In her opinion exhibits 1 to 5 are shopping bags and not handbags.

On cross-examination the witness conceded that the bag depicted in exhibit 13 is a handbag even though it had no closure.

Helen Vogel, an employee of the Lenox Hill Senior Center, was called by defendant and testified that she carries a tote bag to work daily. Her tote bag is similar to exhibit 1, only a little larger. The witness testified that she used a handbag to carry her valuables such as keys and papers and her tote bag for shopping and carrying personal effects such as books, boots and an umbrella, and for carrying personal articles to the beach. The witness did not consider a tote bag to be a handbag because of a lack of security and would call her tote bag a shopping bag. Prior to owning a tote bag she used a shopping bag for carrying personal articles and shopping. Exhibits 1 to 5, according to witness Vogel, are shopping bags since they are open. On one occasion her tote bag was picked, and she lost her wallet and keys.

Defendant called Jo Harris, an import specialist with the Customs Service in Miami, Florida. The witness testified that she is familiar with exhibits 1 to 5 and owns one similar to such exhibits, which she produced. It was received in evidence as exhibit O. The witness testified she obtained exhibit O as a gift when she joined the Doubleday Book Club. She utilizes exhibit O on weekdays, going to work, when she places in it her newspaper, a large, bulky makeup kit, sometimes fruit or something to eat, reading material, and sometimes sewing or knitting. In addition, occasionally she may place in it a pair of shorts and slippers. Witness Harris then testified that these are not the types of articles she would carry in a handbag. In her handbag she carries items such as a wallet, keys, and other valuables. She considers her tote bag, exhibit O, as well as exhibits 1 to 5, to be shopping bags or tote bags. The witness further testified that her position in customs did not include merchandise such as handbags or shopping bags.

Next called on behalf of defendant was Irwin Harold Gold, who is employed by the United States Customs Service as an import specialist in Chicago. The witness testified that he recently received an assignment to visit department stores in the Chicago area to make observations as to the sale of tote bags. He visited four department stores in that area and testified that in Wieboldt's Department Store articles similar to exhibit 1, but constructed similar to exhibit 5, were found in the cosmetics department. In Marshall Field's Department Store he observed an article similar to exhibit 3 in the notions department and on a counter across from the handbag department. In Montgomery Ward's Department Store he observed articles similar to exhibits 1 through 5 in between the notions and cosmetics department, and the stationery department.

In his visits to Carson's Department Store and Sears Department Store, he observed no tote bags. However, in Marshall Field's Department Store in the Oak Brook Shopping Center, he observed a bag similar to exhibits 1 through 5 in the beachwear department. He also visited Horder's Stationery Store and observed articles similar to exhibits 1 to 5 displayed on a rack.

The witness further testified that he visited Kroch's & Bretano's book shop, as well as the Dalton's book store, and observed articles similar to exhibit 1 through 5 displayed on a stand next to the cashier. The witness also visited five handbag shops and observed a tote bag made of burlap sack in only one of the stores.

Warner J. Heuman, chairman of the board of Uniflex Incorporated, manufacturers of plastic shopping bags, was called on behalf of defendant. The witness testified that he has observed articles such as exhibits 1 to 5 displayed at trade shows in which Uniflex merchandise was also displayed. The witness was of the opinion that a tote bag is one which is used to carry merchandise from one place to another, basically the same as a shopping bag. In his opinion, shopping bags and tote bags, such as exhibits 1 to 5, served the same purpose and were in direct competition with his shopping bags.

Mr. Heuman admitted that his corporation never designed, sold, or marketed tote bags such as those in issue and that his bags are constructed by a heat sealing or gluing process and are not sewn or made of a fabric material. He was of the opinion that a tote bag is a shopping bag and not a handbag. Plastic shopping bags, such as the merchandise manufactured by his company fall into the category of flexible plastic packaging. Such bags are not designed as fashion accessories to clothing.

Edward J. Berrigan was called to testify on behalf of defendant. Witness Berrigan is a detective with the New York City Police Department, assigned to the pickpocket and confidence squad. The witness was of the opinion that exhibits 1 through 5 are not secure from pickpockets since they are open. Detective Berrigan further testified that he had encountered cases where tote bags such as exhibits 1 through 5 had been the subject of pickpockets in which wallets and cosmetic cases were removed from the tote bags by thieves.

Samuel Roger Schoenfeld, a handbag designer and owner of a handbag marketing company, testified on behalf of defendant that he has been involved in the handbag industry since 1951. In the opinion of witness Schoenfeld, exhibits 2 to 5 are shopping bags and exhibit 1 is a handbag. The witness' sole distinction between a shopping bag and a handbag is that the latter must be secure. The witness testified that exhibits 2 to 5 are used along with a handbag to carry things that a woman might need, and that it is becoming more common for a woman to carry two handbags. According to the witness a handbag is one that is carried in the hand, such as a tote bag, either secured or unsecured, or a pocketbook.

Exhibit S was identified by Mr. Schoenfeld as a product he sells as a shopping bag. He was of the opinion that all tote bags are not handbags, but a tote bag with security is a handbag.

Witness Schoenfeld sold his merchandise to the handbag departments and luggage departments of department stores. It was the opinion of the witness that exhibit 1 was a handbag because of the presence of a detachable purse. Mr. Schoenfeld further stated that exhibits 2 to 5 would not be considered shoulder bags or clutch bags in the trade.

Defendant called Roger Gerber, a manufacturer of cut and sewn products, whose company manufactures products similar to exhibits 1 to 5. The witness testified that his company displays its goods at trade shows, but not at handbag shows. In the experience of the witness in attempting to sell his products to department stores, he was directed to the notions and stationery departments. He characterized the tote bags manufactured by his company, exhibits T, U and V, as primarily used for carrying purchased merchandise home from the store.

Nancy McTiernan, an import specialist employed by the Customs Service in New York, testified that bags similar to exhibit 2 are displayed in the cosmetics department of Bloomingdales. She further testified that she did not see exhibit 2 in the handbag department of Bloomingdales.

■ Based upon the record it is established the involved merchandise, represented by exhibits 1–5, consists of tote bags, made of a textile material. Said items were given away as premiums or sold. The provision claimed by plaintiff, handbags, is an eo nomine provision which if established would prevail over the provision under which classification was made. This is so since item 706.24, *supra*, is more specific. Additionally, Headnote 1 of Schedule 3, Part 7, Subpart B, specifically excludes articles of textiles provided for elsewhere.

■ The primary issue presented is whether the imported tote bags are handbags as claimed or whether they are excluded from classification under item 706.24, *supra*, by virtue of being shopping bags in accordance with Headnote 2(b) of Schedule 7, Part 1, Subpart D. Alternatively, plaintiff claims the tote bags to be luggage under said item 706.24, *supra*. As indicated, *supra*, the provision for handbags is an eo nomine provision. An eo nomine designation is one which describes a commodity by a specific name, usually one well known to commerce. *United States v. Bruckmann*, 65 CCPA 90, C.A.D. 1211, 582 F.2d 622 (1978). Ordinarily use is not a criteria in determining whether merchandise is embraced within an eo nomine provision. However, use may be considered in determining the identity of an eo nomine designation. In *United States v. Quon Quon Company*, 46 CCPA 70, C.A.D. 699 (1959), the court, in determining whether rattancore articles were baskets or parts of furniture, made the following observation:

While unhesitatingly granting the truth of the contention that "baskets" in the tariff act provides for baskets "eo nomine," this does not help us in the least to decide whether the imported articles are baskets. We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. *Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance.* To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act. [Emphasis added. P. 73.]

■ Following this principle the record establishes that the involved tote bags are utilized by women as second handbags to carry items which do not ordinarily fit within a handbag. Defendant's witnesses, Schoenfeld, Harris and Vogel confirmed the use of the tote bag to carry items which do not ordinarily fit within a handbag. Likewise plaintiff's witnesses, Patterson, Nathan, El Fouly, Androsiglio, Avallone and Koren, testified to the same effect. Accordingly, it is apparent that, while a tote bag may be used to carry purchases, nine of the eighteen witnesses who testified indicated it is used for the convenience of carrying those items which do not fit within a handbag. Such testimony is sufficient to establish the use of a tote bag to be similar to a handbag and as such removes it from the category of a shopping bag which would prevent classification under item 706.24, *supra*. *See* Headnote 2(b) of Schedule 7, Part 1, Subpart D.

The court is aware of the language utilized in *Adolco Trading Co. v. United States*, 71 Cust.Ct. 145, C.D. 4487 (1973) which stated that the articles enumerated by the TSUS as handbags have a closure to prevent valuable and small articles from falling out or from being stolen.[2] The court therein stated that handbags are used to

---

**2.** The court notes that defendant in its brief concedes the concept of a closure for a bag is a viable guideline, but it is not necessarily controlling.

carry money, licenses, credit cards, cosmetics and other personal items. According to Detective Edward J. Berrigan, called on behalf of defendant, wallets and cosmetic cases are removed from tote bags such as exhibits 1 to 5 by pickpockets. These items are ordinarily found in a handbag. Defendant's witness Vogel additionally testified she had been a victim of a pickpocket, having lost a wallet from a tote bag. Whether or not the language with respect to a closure is dicta, the United States International Trade Commission in its publication, "Summary of Trade and Tariff Information," USITC Publication 841, Control No. 7–1–1, November 1977, made the following observation with respect to *Adolco* :

A number of problems has arisen concerning the proper classification of imports of luggage for duty purposes. In C.D. 4487, November 29, 1973, the United States Customs Court ruled that, for customs purposes, shopping bags are not classifiable as "like articles designed to contain clothing or other personal effects during travel" or "like containers and cases designed to be carried with the person, except handbags as defined herein" (in the TSUS). The court established certain dicta which now guide classification decisions. Especially important was the court's emphasis on a closure of some type for luggage which provides security for items contained therein and the use to which the article is put.

However, certain types of totes do not have closures and often serve as a *second bag* for carrying articles in addition to a handbag or sometimes serve as a substitute for a handbag. Customs classifies a bag as a handbag, rather than luggage, if it is commonly known as, or sold or used as a handbag, whether or not it has a closure. However, other totes which are not sold or used specifically as either luggage or handbags, have no closure, but are square in design and have a double handle are usually not classified as either luggage or handbags and are generally dutiable as an article not specially provided for according to the material of chief value. This can mean a substantially

higher rate of duty than is applicable to luggage or handbags. It should be noted that this area of classification is still unclear and individual articles may be subject to a different classification from that described above. [Emphasis added. P. 5.]

Subsequent to the above the United States International Trade Commission issued USITC Publication 841, Control No. 7–1–8, p. 5, dated September 1980, "Summary of Trade and Tariff Information," covering handbags, and made the following statement:

Another significant problem has been that of determining whether "totes" should be classified as handbags, luggage, or articles, not specially provided for, of other materials. As pointed out in the *Summary of Trade and Tariff Information on Luggage* (USITC Publication 841, Control No. 7–1–1, November 1977) certain totes are classified as luggage. These bags generally have closures, clearly are designed for use during travel, and often are sold as part of a luggage set. To clarify this issue, the Customs Service published guidelines (C.S.D. 79–329, Dec. 27, 1978) as an aid in determining the proper classification of such bags, indicating they were not intended to be a definitive answer to every classification problem; rather, that they suggested an approach for dealing with handbags and totes. According to the guidelines, the characteristics of a handbag are as follows:

(a) Traditional handbags:

(1) Vary from small to large, the largest size is 14 inches in height, 12 to 14 inches in width, with no larger gusset than 3 inches (tapered gussets are up to 5 inches at the bottom). Some gussets are larger with this type of bag.

(2) Have one or more zippered wallet pockets for money and keys.

(3) Are compartmented (from one to four compartments).

(4) May or may not have outside pockets.

(5) Have flaps, zippered, or self-enclosures for the entire central portion of the body.

(6) Have hand and/or shoulder straps.

(b) Totes classified as handbags:

(1) The largest size is 14 inches in height, 12 to 14 inches in width, with no more than a 3-inch gusset.

(2) Must have a zippered wallet pocket (note item 7 for exception).

(3) May or may not have compartments.

(4) May or may not have outside pockets with or without closures.

(5) May or may not have a flap or other closure for the entire central portion of the bag body.

(6) Have hand and/or shoulder straps.

(7) The largest tote classified as a handbag without a zippered wallet pocket is 12 inches in height, 10 inches in width, and has a 3-inch gusset.

It is interesting to note that C.S.D. 79–329, referred to above, has the following introductory paragraph to the guidelines set forth, *supra* :

The following guidelines are used by Customs to distinguish between handbags and totes. *These guidelines are intended to be used with flexibility,* as an aid in determining the proper classification of the merchandise. They *are not intended to be a definitive answer* to every classification problem; rather, they suggest an approach for dealing with handbags and totes. [Emphasis supplied.]

In the case at bar it is clear the involved tote bags are used primarily by women as handbags, as defined in Headnote 2(b), Schedule 7, Part 1, Subpart D, albeit a second handbag, and accordingly are properly subject to classification as such as claimed by plaintiff. In view of the foregoing, consideration of the luggage issue need not be reached.

Judgment will be entered accordingly.