**UNITED STATES, Appellant,**

v.

**J. E. MAMIYE & SONS, INC., Appellee.**

**Appeal No. 81–6.**

United States Court of Customs
and Patent Appeals.

Nov. 19, 1981.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, New York City, and Jerry P. Wiskin, New York City, for appellant.

Steven P. Florsheim, Robert B. Silverman and Saul Davis, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

■ This is an appeal from the decision of the U. S. Customs Court,[1] —— Cust.Ct. ——, C.D. 4878, 509 F.Supp. 1268 (1980), holding certain "tote bags" to be properly classifiable as "handbags" under item 706.-24, Tariff Schedules of the United States (TSUS),[2] and not as textile articles not specially provided for under item 389.60 (now 389.62), TSUS,[3] as claimed here by appellant. We affirm.

1. The U. S. Customs Court was renamed the United States Court of International Trade, effective November 1, 1980, by the Customs Courts Act of 1980, P.L. 96–417, 94 Stat. 1727 (1980).

2. Item 706.24, TSUS, provides as follows:

SCHEDULE 7—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

Part 1—Footwear; Headwear and Hat Braids; Gloves; Luggage, Handbags, Billfolds, and Other Flat Goods.

\*          \*          \*

Subpart D.—Luggage; Women's and Children's Handbags; and Billfolds, Card Cases, Coin Purses, and Similar Flat Goods

Subpart D headnotes:

\*          \*          \*

2.  For the purposes of the tariff schedules—

\*          \*          \*

(b) the term "handbags" covers pocketbooks, purses, shoulder bags, clutch bags, and all similar articles, by whatever name known, customarily carried by women or girls, but not including luggage or flat goods as defined herein or shopping bags; and

\*          \*          \*

Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:

\*          \*          \*

Of textile materials (except yarns, of paper), whether or not ornamented:

\*          \*          \*

Other:

Of vegetable fibers and not of pile or tufted construction:

\*          \*          \*

706.24  Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20% ad val.

3. Item 389.60, TSUS, was renumbered item 389.62, TSUS, by Executive Order 11974 of February 25, 1977.

Item 389.62, TSUS, provides as follows:

SCHEDULE 3—TEXTILE FIBERS AND TEXTILE PRODUCTS

\*          \*          \*

Part 7—Miscellaneous Textile Products; Rugs and Scrap Cordage

\*          \*          \*

Subpart B—Textile Articles Not Specially Provided For

\*          \*          \*

### Facts

The subject bags consist of various styles of textile fabric bags, referred to as "totes" or "tote bags," entered under 20 separate entries. During trial, the parties stipulated that Exhibits 1 through 5 were representative of all the entries. The five tote bags are all generally rectangular in shape with an opening at the top extending across the full width of the bag. Each has two cloth handles, one on either side of the opening. Exhibit 1 comes with a detachable small purse with a zipper closure and has an outside pocket. Exhibit 3 has a single snap closure in the middle of the top opening. None of the five exhibits has an inside pocket. Some bags are in plain solid colors; others have simple letter graphics; and one displays a street scene. Some are constructed of a single piece of fabric folded and sewn on one side and the bottom. Others have gussets in the sides and seams finished with edging. One bag has a separate lining.

Upon entry, the bags were classified as articles not specially provided for, of textile materials, under item 389.60, TSUS. Plaintiff-appellee protested, alleging the items to be properly classifiable as handbags under item 706.24, TSUS. The Government answered saying the bags are shopping bags and, therefore, not classifiable as handbags.

At trial, eighteen witnesses were called and fifty-three exhibits were received in evidence. Judge Ford, in his opinion, carefully reviewed the evidence and we will not repeat it here. *See* —— Cust.Ct. at ——,

509 F.Supp. at 1269–74. Based on this evidence Judge Ford found that the bags of the type here in issue are customarily carried by women or girls as an auxiliary or second handbag, properly classifiable under item 706.24, TSUS.

### Issue

Are the subject articles "handbags" but not "shopping bags" within the meaning of Schedule 7, Part 1, Subpart D, TSUS?

### Requirements for Handbags Under Schedule 7, Part 1, Subpart D

The first question which must be resolved is whether the tote bags in issue are "handbags" within the meaning of that term as used in Schedule 7, Part 1, Subpart D, Headnote 2(b), supra, n.2.[4] If the merchandise is not a type of handbag, no consideration need be given to whether appellee's goods fall within the exception which excludes "shopping bags."

The Government asks that we give the term "handbags" a narrow meaning which would limit "handbags" to those bags which are constructed so that a woman can securely carry a wallet and other personal items. In the Government's view, tote bags which are carried open or have no secure closure and which are designed to carry bulky items inherently are not "handbags."

Definitions of "handbag" in standard reference works extant at the time the statute was enacted in 1962, as well as more current editions, support a broader definition than that proposed by the Government:

Articles not specially provided for, of textile materials:

       \*      \*      \*

Other articles, not ornamented:

       \*      \*      \*

Of manmade fibers:

       \*      \*      \*

Other:

       \*      \*      \*

389.62  Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25¢ per lb. + 15% ad val.

---

4. The meaning of a tariff term is a matter of law and, accordingly, may be properly raised on appeal. *United States v. National Carload-* *ing Corp.*, 48 CCPA 70, C.A.D. 767 (1961), and cases cited therein.

(1) Webster's Third New International Dictionary of the English Language, Unabridged Edition (1961 ed.), p. 1026: handbag: 1: traveling bag; 2: a woman's bag made in various shapes of fabric, leather, or plastic, held in the hand or looped by handles over the shoulder, and used for carrying usu. small personal articles and accessories.

(2) Collier's Funk & Wagnalls Standard Dictionary of the English Language, International Edition (1962 ed.), p. 572: handbag: A small, portable bag, as a small satchel or a woman's purse.

(3) Random House Dictionary of the English Language, Unabridged Edition, (1973 and 1980 eds.), p. 642: handbag: 1. a bag or box of leather, fabric, plastic, or the like, for carrying in the hand or under the arm or by suspending from the arm or shoulder, commonly used by women for carrying money, toilet articles, small purchases, etc. 2. valise.

The subject tote bags are "handbags" within the above definitions and we see no basis for holding that the statute should be interpreted as meaning something else. Indeed, the structure of the statute clearly indicates that Congress used the term in its broadest sense, covering all types of bags carried in the hand or on the arm. This is the most logical interpretation when consideration is given to the exceptions which were created. Since it must be presumed that Congress did not use superfluous language in the statute (*United States v. Avdel Corp.*, 64 CCPA 44, C.A.D. 1182, 546 F.2d 901 (1977)), there would be no need to exclude shopping bags and luggage specifically if they were not otherwise included.[5] The only statutory limitation is that the handbags must customarily be carried by women or girls, a limitation which is unquestionably satisfied by the subject tote bags. The articles must, therefore, be classified under item 706.24 unless they are shown to fall under the exclusion for "shopping bags."[6]

*Meaning of "Shopping Bags"*

The second basis advanced for overturning the judgment below is that, if the subject tote bags are held to be generally within the scope of the term "handbags," they nevertheless fall within the exclusion provided for "shopping bags."

The purpose or intent of Congress in excluding "shopping bags" from Subpart D is nowhere reflected in the legislative history of the TSUS. Nor is the term "shopping bag" to be found in any edition of various recognized lexicographic authorities which have been consulted. Moreover, the parties have cited none.

The parties agree that disposable paper or plastic bags with handles, generally square or rectangular in shape, which are routinely used to package purchased goods at the time of sale are shopping bags. Appellee would have us limit the term to such bags—what might be called packaging type shopping bags. The Government, on the other hand, asserts that "tote bags" were developed in England during World War II to avoid the tax on "handbags" and were called "shopping bags"; that the disposability of paper and plastic shopping bags reflected the tenor of the post-World War II society of the 1950's and early '60's; that the energy and natural resource conscious society of the '70's led to the popularity of fabric bags to be used for the same purpose for which plastic and paper shopping bags had heretofore been used; and that even the packaging type shopping bags are not limited in use to carrying purchases home from the store but are frequently used or re-used to carry personal effects.

---

**5.** Since the intent of Congress is ascertainable from the statute, we need not consider the arguments of the parties whether the subject bags are *ejusdem generis* with the named handbag styles. *Sandoz Chemical Works, Inc. v. United States*, 50 CCPA 31, C.A.D. 815 (1963).

**6.** The Government's further argument that the subject tote bags are not handbags *because* they are shopping bags is also rejected. That these articles may not be classified or subjected to duty under item 706.24, TSUS, because of the exclusion therefrom if they are shopping bags, is a result of the specific exclusion, not because the term "handbags" was intended to be interpreted in a way which inherently excludes them.

The Government concludes that the bags in question, made of textile material, are the "in vogue, durable and reusable shopping bags of today."

■ Since we have no specific guidelines from Congress and only personal divergent views of witnesses as to the types of bags the term "shopping bags" encompasses, it is appropriate to rely on the usual rule of statutory construction that an exception which carves out something which would otherwise be included must be strictly construed.[7] *Corn Products Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955); *De Haan Co. v. United States*, 55 CCPA 76, C.A.D. 936 (1968); *Joleo Impex Co. v. United States*, 45 Cust.Ct. 6, C.D. 2189 (1960). Accordingly, we construe the term "shopping bag" to mean a bag primarily used for shopping, that is, for carrying purchased articles from the place of purchase to the place of use.[8] The court below found that tote bags of the types here in issue, while useful for shopping, are primarily used as a second handbag for the convenience of carrying additional personal articles that would not fit in one handbag. The record amply supports this conclusion that the chief use is to carry articles already in one's possession, such as books, packed lunches, umbrellas or extra shoes.[9]

Appellant finally argues that regardless of the classification of tote bags generally, the evidence in this case establishes that appellee's tote bags are promoted and used as shopping bags. In particular the Government principally relies upon collective Exhibit 6 which consists of advertisements used by the purchasers of appellee's tote bags, all of whom offered the bags as premiums with the purchase of other items. None indicates that shopping is the sole or even the chief use of the bag. Exhibit 6A shows a photograph of one style of appellee's tote bags containing books offered to new subscribers of a book club. Purchases of these books would obviously be made by mail, not by shopping. Exhibit 6B refers to another of appellee's tote bags as a "canvas carryall." Exhibit 6C identifies yet another as a "multipurpose tote bag." Exhibit 6D, an advertisement used by another book club, states that the bag is:

> Designed for durability plus flair, this roomy tote is ready to go shopping or picnicking, to the office or to the beach.

Appellee's witness testified that these uses are typical for all of the subject tote bags. Appellant's position is not supported by the record.

### Conclusion

The judgment of the Court of International Trade that the subject merchandise is properly classifiable under item 706.24, TSUS, is *affirmed.*

---

**7.** If these bags are neither handbags nor luggage, they would then be classified under 389.-62, TSUS, a basket provision. Giving a strict construction to shopping bags is in line with one of the purposes of the TSUS, viz., to deemphasize the importance of and restrict the scope of tariff basket provisions. *United States v. A. Johnson & Co.*, 66 CCPA 35, C.A.D. 1218, 588 F.2d 297 (1978).

**8.** While packaging type shopping bags may also in fact be re-used for a variety of purposes, we do not consider that such use negates that these bags are chiefly used for shopping.

**9.** Judge Ford was, therefore, correct in not adopting the rationale of *Adolco Trading Co. v. United States*, 71 Cust.Ct. 145, C.D. 4487 (1973), to the extent it was based on physical characteristics of a bag rather than chief use.