United States Court of Appeals,

Fifth Circuit.

No. 93-3053.

Juan R. TORRES, Sr., Plaintiff,

v.

McDERMOTT INCORPORATED and Freeport-McMoRan, Inc., Defendants.

FREEPORT-McMORAN RESOURCE PARTNERS, Limited Partnership, Defendant-Third Party Plaintiff-Appellee,

v.

SECO INDUSTRIES, INC. and the Gray Insurance Company, Third-Party Defendants-Appellants.

Feb. 1, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY and DAVIS, Circuit Judges, and TRIMBLE[1], District Judge.

TRIMBLE, District Judge:

Appellant SECO challenges the district court's order enforcing appellee Freeport's indemnity agreement. Because we agree with appellant that the Louisiana Anti-Indemnity Act applies to render the indemnity agreement unenforceable, we reverse and remand.

## I. FACTUAL BACKGROUND

Freeport-McMoRan Resource Partners, Limited Partnership (Freeport) and SECO Industries, Inc. (SECO) entered into a contract by the terms of which SECO was obligated to perform the electrical and instrument systems hook-up on a sulphur mining facility being constructed by Freeport. Article I of exhibit "A" to the contract defined the scope of work concisely as follows:

> "The COMPANY (Freeport) is constructing a new sulphur mining facility in the Gulf of Mexico southeast of Venice, Louisiana within Block 299 Main Pass ... The Work of this Contract is hook-up of electrical and instrument systems as further defined hereunder."

Article II of exhibit "A" provides the following detailed description of the work to be performed by SECO:

[1]District Judge of the Western District of Louisiana, sitting by designation.

"a) Provision of all labor, equipment, tools, and co nsumables, except diesel fuel, required for the performance of the Work;

b) Hook-up and disconnection of temporary electrical power;

c) Hook-up and disconnection of temporary facilities, e.g., temporary quarters, water and waste systems, etc.;

d) Installation of lighting fixtures;

e) Installation of cable tray;

f) Installation and/or termination of all wires and cables required to provide a complete electrical system;

g) Installation and hook-up of all shipped loose instruments;

h) Install instrument cables and fiber optic cables and make terminations;

i) Assist manufacturers' representatives, as required, for the installation or connection of specialized systems, e.g., communications systems and $H_2S$ detection system;

j) Field check-out and testing of electrical systems;

k) Field calibration, check-out and functional testing of instrument systems;

l) Provision of any project materials, as instructed by COMPANY;

m) All scaffolding required for the safe performance of the Work;

n) All Work is to be done in accordance with the drawings and specifications attached hereto."

Freeport's sulphur platform on which the work was to be performed is several miles long and, at the time of the incident giving rise to this litigation, still under construction in certain portions. On other portions, sulphur drilling was in progress through the Frasch process. SECO's work was being performed on an area of the platform still under co nstruction and where there was no drilling in progress.

The plaintiff in this suit, Juan R. Torres, Sr., was an employee of SECO who alleged injury to himself when he claims to have tripped on a defective walkway while carrying a box of electrical equipment. He sued Freeport, which in turn filed a third-party demand against SECO and its insurer, The Gray Insurance Company (Gray), claiming that SECO was its contractual indemnitor. In response, SECO and Gray interposed as its only defense the Louisiana Oilfield Anti-Indemnity Act (LRS-9:2780).

Freeport settled with Mr. Torres for an amount which the parties stipulated was reasonable, leaving for resolution only Freeport's claim against SECO for indemnity. This appeal is from the trial court's grant of summary judgment in favor of Freeport on its indemnity claim. The only issue presented to this court is whether Louisiana's Oilfield Anti-Indemnity Act (LOAIA) invalidates the indemnity arrangement between Freeport and SECO.

## II. LEGAL ANALYSIS

The operative provisions of LRS-9:2780 applicable to this case are as follows:

"Subsection B provides:

Any provision contained in ... an agreement ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either....

Subsection C provides:

The term "agreement' ... means any agreement ... concerning any operations related to the exploration, development, production, or transportation of ... or drilling for minerals ... or otherwise rendering services in or in connection with any ... structure intended for use in the exploration for or production of any mineral....

Subsection E provides:

This Section shall have no application to public utilities, the forestry industry, or companies who drill with the Frasch process, so long as the work being performed is not any of the operations, services, or activities listed in Subsection C above, except to the extent those services or activities include drilling through the Frasch process."

As indicated above, there was sulphur drilling in progress through the Frasch process in certain areas of the platform, but not where Mr. Torres was working. That part of the platform related to the SECO contract was under construction.

The trial court, in granting summary judgment favorable to Freeport, held the LOAIA inapplicable to the contract *sub judice* under its interpretation of Subsection E above because the Main Pass Sulphur Mining Facility utilized the Frasch drilling process on its structure. The court reasoned as follows:

"... SECO suggests that the language only applies to drilling activity which includes the Frasch process, but a plain and reasonable reading of the statute in context indicates otherwise. Through use of the phrase "those services or activities', the reader is referred back to all of the types of work listed in sub-section C. If the legislature had intended to exempt only drilling activity, it would have so stated or caused the reader to refer back to "activity' in the singular.

"Furthermore, the interpretation suggested by SECO reduces sub-section E to nothing more than an exemption to the indemnity prohibition for contracts to perform drilling work where the Frasch drilling process will be used. Such a reading renders much of the statute's language superfluous, an effect which this court must avoid in its interpretation. (Citing authority) A reading which includes in the exemption all service work listed in sub-section C which is to be performed on a project where Frasch drilling will be used allows proper meaning to all the language in sub-section E.

"Based on the court's interpretation, companies which employ the Frasch drilling process may have valid indemnity clauses in their service contracts only as to those projects which include Frasch drilling. Accordingly, because Freeport utilizes the Frasch drilling process at the Main Pass Sulpur/sic/ Mining Facility, the indemnity clause in Freeport's contract with SECO for work on that facility is valid, and Freeport is entitled to summary judgment on the basis of that indemnity provision."

The trial court's decision in the instant case followed an earlier Eastern District of Louisiana decision, *Knight v. Freeport-McMoRan, Inc.,* No. 87-4526, decided in August of 1989. In the *Knight* case, Judge Carr, citing this court's decision in *Copous v. ODECO Oil and Gas Company,* 835 F.2d 115 (5th Cir.1988), for the proposition that the LOAIA should be broadly construed to nullify indemnity agreements involving the oil industry, held that a contract for renovation of living quarters on an oil platform was sufficiently related to production of oil and gas as to be within the scope of the LOAIA. The trial judge stated:

"Clearly, the above cases dictate a jurisprudential interpretation of the Oilfield Indemnity Act which the Court can apply to the present case. If the Act is to be construed broadly, as the case law tells us it should, then *all* portions of the Act must be so construed, including of course the Sub-section E Frasch Process exception."

In *Knight,* the injured worker was an employee of a painting contractor which had covenanted with Freeport Research and Engineering Company (FREC) to perform painting on a sulphur production platform which FREC was renovating with the intention of placing back into production. The court noted that the first sulphur production on the platform following the renovation occurred over two years after plaintiff's injury. Despite this, the court found that FREC, because the renovation work was "closely related" to the "overall purpose" of producing sulphur, was entitled to the exemption in Sub-section E applicable to "companies who drill with the Frasch process." It was the argument of the paint contractor that FREC was not entitled to this exemption because it did not own any drilling equipment for sulphur production and in fact no company began drilling for sulphur on the platform in question until after the employee's injury. The judge in *Knight* did not even arrive

at a consideration of the third clause of Subsection E of the LOAIA. Even though there was no evidence that FREC was itself a company which actually drilled with the Frasch process, the court opined that since renovation of the platform was closely related to production drilling for sulphur through the Frasch method, the exemption applied. In fact, there was no discussion of either the second or the third clauses of Subsection E, the court finding adequate justification for its decision in the broad exception expressed in the first clause without attempting to divine the meaning of the qualifying language found in the last two clauses.

Counsel for Freeport first argues that the express purpose of the LOAIA is the invalidation of indemnity agreements affecting work only in the oil and gas industry, citing *Copous, supra,* and *Meloy v. Conoco, Inc.,* 504 So.2d 833 (La.1987). Not only do those cases fail to restrict LRS-9:2780, the language of the Act itself negates any such interpretation. Subsection A decries the indemnity inequities in agreements relating to wells for "oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state." Subsection B invalidates any indemnity agreement pertaining to any such endeavors. This all-encompassing description of the types of work to which the statute pertains appears repeatedly in the statute.

Referring to the *Knight* case, Freeport's counsel urges a "plain reading" interpretation of Subsection E. That approach, he says, results in a total exemption of the sulphur industry from the effects of the LOAIA. Counsel argues that any other interpretation of the last clause would perhaps "inadvertently delete" the exemption it had granted in the first clause. He further finds support for his position, as did the district court, in the fact that the last clause speaks of "services and activities" in the plural rather than simply specifying "drilling activity." To this argument, SECO's attorney counters that "services and activities" is plural in Subsection C, necessitating the use of the plural in the last clause of Subsection E.

Finally, Freeport contends that the LOAIA is to be construed broadly, citing as authority *Livings v. Service Truck Lines of Tex., Inc.,* 467 So.2d 595 (La.App. 3rd Cir.1985), and *Copous, supra.* A broad interpretation of the Act, counsel argues, mandates a broad interpretation of all of the Act, including Subsection E. SECO responds that the Act is indeed to be interpreted broadly to

accomplish its stated purpose, but that Subsection E provides for limited exceptions to the Act, which exceptions are to be strictly construed.

It cannot be gainsaid that Subsection E of the Act is awkwardly worded. This is likely true of other portions of the Act. The court notes that House Concurrent Resolution No. 43 of the 1992 regular session of the Louisiana legislature created a task force to "study and propose revisions of the Louisiana Oilfield Anti-Indemnity Act." The necessity for this action was stated to be the fact that numerous court decisions interpreting the Act had been rendered and numerous legislative instruments had been introduced to amend the Act. Freeport suggests that if the legislature had intended the interpretation of the final clause of Subsection E advocated by SECO it could have simply made the last clause read "except drilling through the Frasch process." It may be said with equal authority that if the legislature had intended that the Act have no application to any work or activity in any way related to the sulphur industry, Subsection E would have been written as follows:

"E. This Section shall have no application to any work, operations, services, or activities related to the sulphur industry. This Section shall have no application to public utilities or the forestry industry, so long as the work being performed is not any of operations, services, or activities listed in Subsection C above."

The interpretations in *Knight* and in the trial court's decision in this case in effect interprets the statute as presently worded to read as suggested above.

Article 9 of the Louisiana Civil Code provides:

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature."

Subsection E can hardly be described as "clear and unambiguous". Article 10 of the Civil Code states:

"When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."

Subsection A of the statute states its purpose in unequivocal language:

" * * * It is the intent of the legislature by this Section to declare null and void and against public policy of the State of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee."

The *Livings* and *Copous* decisions, *supra,* judicially acknowledged that this remedial legislation should be broadly construed to accomplish its plainly stated purpose of nullifying indemnity agreements which protect the indemnitee against indemnitee fault at the expense of the indemnitor if the indemnity provisions are part of an agreement "pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state." We are in accord with the determination that the statute should be broadly construed and apply that principle to this case.

Subsection E provides limited exceptions to the application of the Act. Counsel for SECO correctly asserts that exceptions to statutes are to be *strictly* construed, citing *State v. Department of City Civil Service,* 215 La. 1007, 42 So.2d 65 (1949). The same rule is recognized in federal jurisprudence. For example, in *Piedmont & Northern Ry. v. ICC,* 286 U.S. 299, 311-12, 52 S.Ct. 541, 545, 76 L.Ed. 1115 (1932), the Court stated:

> "The ... Act was remedial legislation and should therefore be given a liberal interpretation; but for the same reason exemptions from its sweep should be narrowed and limited to effect the remedy intended."

See also *U.S. v. Luna,* 768 F.Supp. 705 (N.D.Cal.1991) (" * * * statutory exceptions are to be strictly construed so as to prevent the exception from swallowing the rule") and *United States v. J. E. Mamiye & Sons, Inc.,* 665 F.2d 336 (Ct.Cus. and Pat.App.1981) (" * * * it is appropriate to rely on the usual rule of statutory construction that an exception which carves out something which would otherwise be included must be strictly construed").

The first clause of Subsection E, in sweeping language, exempts "public utilities, the forestry industry, or companies who drill with the Frasch process" from the statute's ambit. The second clause, however, states that the exception is operative to the excepted industries only "so long as the work being performed is not any of the operations, services, or activities listed in Subsection C." Subsection C contains a long, detailed, but nonexclusive list of operations, services, and activities encompassed by the Act. In the final clause of Subsection E there is an exception to the limitation of the exception expressed in the second clause. If the "services or activities" obviously referred to in the second paragraph include drilling through the Frasch process, then the exemption from the Act applies despite the fact that the work includes some or all of the other activities specified in

Subsection C, such as *production* or *transportation* of sulphur. "Those services or activities" mentioned in the third clause clearly relate back to "the operations, services, or activities" mentioned in the second clause of Subsection E. It was necessary that "services or activities" be in the plural because it was in the plural in the second clause of Subsection E and in Subsection C. If the services or activities provided for in the agreement do not include drilling through the Frasch process, then there is no exemption from the LOAIA as it is presently written.

This does not result in a total emasculation of the exemption as it relates to the sulphur industry. If Freeport's contract with SECO had obligated SECO to construct a portion of the platform, perform the hook-up work which it in fact contracted to do, and perform start-up drilling operations, then indeed Freeport would have been able to procure a valid indemnification from its own fault for all phases of the work that SECO was to execute. Services to be discharged by SECO under its contract, however, did not in this case include start-up or any other drilling procedure.

Applying the precepts of legislative interpretation discussed above and analyzing Subsection E of the statute clause by clause, there is no wholesale exemption from the Act of the sulphur industry or any industry which drills with the Frasch process. It does not, for example, exempt companies who drill with the Frasch process where the agreement is restricted to the services or activities of *production* or *transportation* or *furnishing* or *rental of equipment* in connection with the sulphur industry. If, however, the agreement calls for "drilling" as any phase of the contract, then companies who utilize the Frasch process may validly obtain indemnification against their own fault. SECO's contract did not include drilling operations. The LOAIA therefore applies to invalidate the indemnity provisions of the Freeport-SECO contract in this case.

For the reasons herein expressed, the trial court's summary judgment in favor of Freeport is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion. It is so ordered.