# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2024

Lyle W. Cayce
Clerk

No. 23-30076

QBE Syndicate 1036,

*Plaintiff—Appellant*,

*versus*

Compass Minerals Louisiana, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:20-CV-554

Before Smith, Southwick, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

The insurer of two companies that contracted for work at a Louisiana salt mine filed a declaratory action, asserting that the Louisiana Oilfield Anti-Indemnity Act applied to invalidate certain indemnification and additional-insured provisions in these contracts. The insurer contends that the Act applies to agreements that pertain to "drilling for minerals," and that these agreements are thus covered by the Act because the salt mine uses a "drill-and-blast" method for mining salt. The district court did not reach that question because it concluded that the Act requires that the agreements "pertain to" a "well," and the mining operations at the Cote Blanche salt

mine do not involve a well. Because the district court legally erred in concluding that the Act contains a universal "well" requirement, we REVERSE and REMAND to the district court to decide, in the first instance, whether the fire-suppression and electrical-work contracts at issue here "pertain[] to . . . drilling for minerals."

## I.

Defendant-Appellee Compass Minerals Louisiana, Inc. ("Compass") is part of a "multi-national mineral company that owns and operates multiple salt mines in North America and the United Kingdom." Among Compass's locations is its Cote Blanche salt mine, located on Cote Blanche Island in St. Mary Parish, Louisiana.

At the Cote Blanche salt mine, Compass uses a "drill-and-blast" mining method. On its website, Compass describes the process as follows:

> The drill-and-blast mining method begins by cutting into the rock salt face using specialized equipment. We then drill holes into the face and use explosives to break the salt into large rocks. Front-end loaders and trucks load and haul the salt to a crusher where it is reduced in size, loaded onto a conveyor belt and transported to a mill. The mill screens and crushes the rock salt to the customary size before the salt is hoisted to the surface.

For underground fire-prevention and electrical support at the Cote Blanche salt mine, Compass contracted with Louisiana-based companies Fire & Safety Specialists, Inc. ("FSS") and MC Electric, LLC ("MCE"). In its respective purchase orders with each contractor, Compass included an indemnity provision, under which FSS and MCE agreed to indemnify, hold harmless, and defend Compass from all claims and liabilities for any damage, injury, death, loss, or destruction of any kind relating to the parties' agreement. Each purchase order also included an additional-insured

2

provision, requiring FSS and MCE to name Compass as an additional insured on the insurance policies required by the contract.

On August 15, 2019, an electrician employed by MCE died in an accident at the Cote Blanche salt mine. The decedent, Shawn Clements, "contacted an energized electrical circuit while attempting to install a new circuit for the fire suppression system at the salt mine." Clements's family filed a survival and wrongful-death suit in state court against Compass and FSS, alleging that a Compass electrician and FSS technician had incorrectly advised Clements that the fire-suppression system was de-energized. Plaintiff-Appellant QBE Syndicate 1036 ("QBE"), the insurer of MCE and FSS, represents that the suit remains pending in the 16th Judicial District Court for the Parish of St. Mary, under Case No. 135048.

At the time of the accident, both FSS and MCE held a commercial general liability policy with QBE. Compass sent a letter to QBE seeking defense, indemnity, and coverage for the wrongful-death suit, on the basis of the indemnification and additional-insured provisions of the MCE and FSS purchase orders.

On May 1, 2020, QBE filed a declaratory action in federal court, asserting that the indemnification and additional-insured provisions in the FSS and MCE purchase orders are "null, void, and unenforceable" under the Louisiana Oilfield Anti-Indemnity Act ("the LOAIA" or "the Act"),[1] La. Stat. Ann. § 9:2780. QBE, quoting the LOAIA, contended in its

---

[1] "The section is officially entitled 'Certain indemnification agreements invalid,' but it is most often referred to as the Louisiana Oilfield Indemnity Act (LOIA). At times, however, courts have referred to the LOIA as the Louisiana Oilfield Anti-Indemnity Act." G. Roth Kehoe II, Comment, *The Louisiana Oilfield Indemnity Act: A Necessary Limit to Contract Freedom or Paternalism for Roughneck Contracts?*, 70 Tul. L. Rev. 1097, 1099 n.11 (1996).

complaint that the Act renders "void and unenforceable" certain indemnification provisions in "agreement[s] pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state." QBE alleged that Compass uses a drill-and-blast mining method at the Cote Blanche salt mine and that Compass's purchase orders with FSS and MCE are covered by the LOAIA because they are "agreements" "pertaining to . . . drilling for minerals." QBE sought a declaration that it "owes no duties to Compass whatsoever in connection with the [state] lawsuit."

On August 22, 2022, QBE and Compass filed cross-motions for summary judgment. QBE argued that, because Compass's drill-and-blast method of mining for salt constitutes "drilling for minerals," as used in the statute, the provisions Compass relied on in its purchase orders with FSS and MCE were void and unenforceable under the LOAIA. Compass disagreed, arguing in its motion that the LOAIA requires a nexus to a well, which Compass's Cote Blanche operations did not have, and that the drill-and-blast method is "completely different from the exploration and drilling methods used by oil and gas . . . companies."

On December 16, 2022, the district court granted Compass's motion and denied QBE's motion, concluding that the LOAIA did not apply to the purchase orders and therefore did not invalidate the indemnification provisions. The court concluded that, under this court's decision in *Transcontinental Gas Pipe Line Corp. v. Transportation Insurance Co.*, 953 F.2d 985 (5th Cir. 1992), the LOAIA requires that the agreement "pertain to" a "well," and it is undisputed that the mining operations at the Cote Blanche salt mine do not involve a well. The court rejected QBE's argument that Compass "drill[s] for" salt by using the drill-and-blast method because the court concluded that the term "drilling for minerals" in the LOAIA "should be construed as referring to the drilling of a well." QBE appeals.

## II.

We review a summary judgment de novo. *Rolls ex rel. A.R. v. Packaging Corp. of Am.*, 34 F.4th 431, 439 (5th Cir. 2022). The parties agree that Louisiana substantive law—here, the LOAIA—governs resolution of this diversity case. *Gulf & Miss. River Transp. Co. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). As a federal court interpreting Louisiana law, we "first look to final decisions of the Louisiana Supreme Court." *Id.* (citation omitted). Where the Louisiana Supreme Court has not decided an issue, we "must make an '*Erie* guess' as to how the state supreme court would decide the issue." *Guilbeau v. Hess Corp.*, 854 F.3d 310, 311 (5th Cir. 2017) (citation omitted).

Louisiana is one of four states that have passed an oilfield anti-indemnity act ("OAIA"). The parties here dispute the meaning of Louisiana's Act. The LOAIA, passed in 1981, nullifies certain contractual defense and indemnity provisions as contrary to public policy. As the Louisiana Supreme Court has explained, the LOAIA "arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract." *Fontenot v. Chevron U.S.A. Inc.*, 676 So. 2d 557, 563 (La. 1996).

To that end, the Act provides:

> A.    The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some ***agreements pertaining to wells for oil, gas, or water, or drilling for minerals*** which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of

5

No. 23-30076

Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

B.    Any provision contained in, collateral to, or affecting *an agreement pertaining to a well for oil, gas, or water, or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C.    The term "agreement," as it pertains to a well for oil, gas, or water, *or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, as used in this Section, means *any agreement or understanding*, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, *or drilling for minerals* which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing *or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in*

6

*the exploration for or production of any mineral*, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

LA. STAT. ANN. § 9:2780(A)-(C) (emphases added).

QBE argues that the LOAIA applies to Compass's purchase orders with FSS and MCE because the Act does not require that the agreements "pertain to" a "well," and the mining operations at the Cote Blanche salt mine involve "drilling for minerals." QBE therefore contends that the indemnification and additional-insured provisions in the agreements are null and void, and it accordingly does not owe coverage for the suit filed by Clements's family.

## III.

QBE's reading of the LOAIA requires two key interpretive arguments about the statute. First, the statute must be read to cover operations beyond just those pertaining to a well. If the statute governs only those agreements with a nexus to a well, then it does not apply here; it is undisputed that Compass's salt mining does not involve a well. Second, even if there is no "well" requirement, the agreements at issue in this case must "pertain to" "drilling for minerals," as that term is used in the statute. If either of these arguments fails, then the LOAIA does not apply to the agreements here.

## A.

Compass argues, and the district court agreed, that for the LOAIA to apply, the agreement at issue must pertain to a well. For the reasons discussed below, this was error.

No. 23-30076

We first address whether this court or the Louisiana Supreme Court has decided this issue because, if so, we need not look any further. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462-63 (5th Cir. 2010); *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) ("To determine Louisiana law . . . this Court should first look to final decisions of the Louisiana Supreme Court." (citation omitted)).

We conclude that, although courts have stated in broad terms that the LOAIA requires that an agreement pertain to a well, neither this court nor the Louisiana Supreme Court has addressed the question presented by QBE: whether the LOAIA applies to provisions in agreements that pertain to "drilling for minerals," even where the agreements do not "pertain[] to a well." La. Stat. Ann. § 9:2780(B), (C). After surveying the existing case law, we make an *Erie* guess based on a textual analysis of the statute.[2]

**1.**

We are "a strict *stare decisis* court," meaning that a prior panel's "interpretation of state law is 'no less binding on subsequent panels than are prior interpretations of federal law.'" *Bustos*, 599 F.3d at 462 (quoting *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998)). Here, Compass and the district court find support for the LOAIA's "well" requirement in this court's 1992 opinion in *Transcontinental Gas*, 953 F.2d at 985. The district court concluded, and Compass urges on appeal, that because the operations at the Cote Blanche salt mine do not "pertain to" a well, "under *Transcontinental Gas*, 'the inquiry ends.'"

---

[2] On October 12, 2023, we certified the two questions at issue in this case to the Louisiana Supreme Court. *QBE Syndicate 1036 v. Compass Mins. La., Inc.*, 83 F.4th 986, 993-94 (5th Cir. 2023). On December 19, 2023, that court denied certification by a 4-3 vote. *QBE Syndicate 1036 v. Compass Mins. La., Inc.*, 374 So. 3d 979 (La. 2023) (mem.).

Because of an explicit disclaimer in that opinion, however, *Transcontinental Gas* does not do the work that Compass asks of it. In *Transcontinental Gas*, this court addressed whether the LOAIA covered a natural-gas transportation company's ("Transco's") agreements with a contractor providing painting, sandblasting, and inspection work on Transco's "platforms and pipelines located in the Gulf of Mexico or in the adjacent marshlands of Louisiana." *Transcon. Gas*, 953 F.2d at 986. The court rejected the insurers' and amici's arguments that the LOAIA covers "all contracts touching transportation of natural gas." *Id.* at 989-95. In reaching its conclusion, the court stated that "the threshold requirement for applicability of the [LOAIA] is that the contract under scrutiny pertain to a well." *Id.* at 991. The court then set out a two-step process for assessing the LOAIA's applicability and, in so doing, reiterated multiple times that the Act requires that the agreement pertain to a well. *Id.* That proposition may seem to resolve this case, and Compass argues as much.

But what Compass does not mention—and what QBE emphasizes repeatedly—is that the *Transcontinental Gas* opinion includes a footnote indicating that the "pertains to a well" rule is not as absolute as it seems. Specifically, in the main text, the court quotes the legislature's proclamation in subsection (A) of the statute that "an inequity is foisted on certain contractors . . . by the defense or indemnity provisions . . . , contained in some [1] *agreements pertaining to wells* for oil, gas, or water, or [2] drilling for minerals." *Id.* at 990. It then includes a footnote that says: "The APS/Transco agreement does not implicate 'drilling for minerals,' if in fact 'drilling for minerals' can be extricated from 'wells.' Therefore, the portion of the Act concerned with 'drilling for minerals' is not directly at issue here." *Id.* at 990 n.18.

QBE has (rightfully) seized on this footnote. Its fundamental argument is that "drilling for minerals" is a separate basis for the LOAIA's

application. The statute applies to "agreements pertaining to a well for oil, gas, or water, or drilling for minerals." LA. STAT. ANN. § 9:2780(A). Thus, the argument goes, *Transcontinental Gas*'s rule that an agreement must pertain to a well applies only if the agreement does not otherwise pertain to "drilling for minerals." In other words, only if a party is invoking the "wells for oil, gas, or water" clause does it need to show a nexus to a well. Otherwise, the LOAIA can apply so long as the agreement "pertain[s] to . . . drilling for minerals." *Id.*

QBE's view is the only fair reading of *Transcontinental Gas*. Although the main text speaks broadly and repeatedly about the LOAIA as a whole,[3] footnote 18 is clear that the "drilling for minerals" language is not at issue in the case. More importantly, footnote 18 raises the very question that QBE now asks this court to answer—namely, whether, "in fact, 'drilling for minerals' *can* be extricated from 'wells.'" *Transcon. Gas*, 953 F.2d at 990 n.18 (emphasis added). It cannot be right, then, that *Transcontinental Gas* on its own terms confirms that even a contract for "drilling for minerals" requires a nexus to a well.

In addition to footnote 18, there are other indicia in the opinion that the *Transcontinental Gas* court perceived "drilling for minerals" as possibly distinct from "wells." First, the text to which footnote 18 is attached reflects a disjunctive view of the statutory phrase. Again, the court quoted subsection (A) as discussing indemnity provisions "contained in some [1] agreements pertaining to wells for oil, gas, or water, or [2] drilling for minerals." *Id.* at 990. The bracketed numbering [1] and [2] is an insertion of the court's. And while the exact placement of the numbering cannot be accurate—it generates

---

[3] *E.g.*, *Transcon. Gas*, 953 F.2d at 991 ("[T]he legislature intended the Act to apply if (but only if) an agreement pertains to a well."); *id.* ("[T]he threshold requirement for applicability of the statute is that the contract under scrutiny pertain to a well.").

an ungrammatical sentence ("contained in some . . . drilling for minerals")—the decision to bifurcate the sentence in this way reinforces the court's footnoted suggestion that "drilling for minerals" may be untethered from "wells for oil, gas or water."

Second, in its long-form description of the LOAIA's "two-step process," the court appears to confine the prescribed inquiry to the "well" clause of the statute. Specifically, the court says that, "[f]irst, there must be an agreement that 'pertains to' an oil, gas or water well." *Id.* at 991. Tellingly, it includes only "oil, gas or water" and *not* the phrase that follows "water"—that is, "drilling for minerals."

Third, the court approvingly cites a district-court opinion about the LOAIA's scope and summarizes that court's view as finding that "the Act did not apply to the contract in question because the contract must pertain to a well for oil, gas or water, or *to* drilling for minerals." *Id.* at 992 (emphasis added) (citing *Clarkco Contractors, Inc. v. Tex. E. Gas Pipeline Co.*, 615 F. Supp. 775, 780 (M.D. La. 1985)). That final iteration of the word "to" suggests a disjunctive construction: a contract must pertain to a well for oil, gas or water, *or* it must pertain to drilling for minerals.

Fourth and finally, when introducing its list of factors for the "case-by-case analysis," the court in *Transcontinental Gas* again gives "drilling" separate grammatical treatment. The court explained, "to determine whether a contract pertains to a well *or to drilling* requires a fact intensive case-by-case analysis." *Id.* at 994 (emphasis added).

Accordingly, we conclude that *Transcontinental Gas* does not hold that, under all circumstances, the LOAIA requires that a contract "pertain to a well." The court explicitly left that question open. The district court therefore erred in concluding otherwise.

No. 23-30076

**2.**

Having so concluded, we must ask: *Does* the LOAIA apply to only those contracts that "pertain to a well," even if those agreements involve "drilling for minerals"? Our court's caselaw has not shed further light on this question.[4] We have, in numerous cases, reiterated and reinforced *Transcontinental Gas*'s rule that the LOAIA applies to those contracts that pertain to a well, but with no separate analysis of the "drilling for minerals" clause.[5]

Nor do we find an answer in state law. The Louisiana Supreme Court appears to have discussed the meaning of the LOAIA on only three occasions

---

[4] Compass mistakenly asserts that the LOAIA applies only to oil-and-gas work. This court's decision in *Torres v. McDermott Inc.*, 12 F.3d 521 (5th Cir. 1994), forecloses that argument. *Torres* explicitly rejected the assertion that the LOAIA invalidates "indemnity agreements affecting work only in the oil and gas industry," because "the language of the Act itself negates any such interpretation." 12 F.3d at 524-25. While *Torres* thus stands for the proposition that the Act's applicability is not limited to oil-and-gas work, it does not separately answer the "well"-requirement question that QBE poses here.

[5] *E.g.*, *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 743-46 (5th Cir. 2016) (per curiam) (citing the two-step process from *Transcontinental Gas* and "conclud[ing] that a contract for salvaging a platform from a decommissioned oil well has a sufficient nexus to a well under [the LOAIA]"); *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 253-54 (5th Cir. 2001) (applying the *Transcontinental Gas* factors and concluding that the agreements at issue "pertained to specific wells and that the agreement related to the exploration, development, production, or transportation of oil, gas, or water"); *Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 784-85 (5th Cir. 1997) (explaining that the LOAIA nullifies "indemnity provisions [that] are part of an agreement pertaining to an oil or gas well," and concluding that, there, the "nexus [was] strong enough"); *U.S. Fid. & Guar. Co. v. Loop, Inc.*, 961 F.2d 84, 85 (5th Cir. 1992) (per curiam) (approvingly quoting *Transcontinental Gas* as holding that the LOAIA applies "if (but only if) the agreement . . . pertains to a well" and concluding that oil storage wells at a salt dome cavern do not qualify because "the 'well' must be . . . incidental to the production of oil or gas," rather than "incidental to storage facilities only"); *Broussard v. Conoco, Inc.*, 959 F.2d 42, 44-45 (5th Cir. 1992) (citing *Transcontinental Gas*'s "well" requirement and concluding that the contract at issue "pertains to a well").

12

since the Act's passage in 1981. Two of those cases say nothing about whether the LOAIA applies only to agreements that pertain to a well. *See Meloy v. Conoco, Inc.*, 504 So. 2d 833, 838 (La. 1987) (explaining what types of contractual provisions are nullified by the LOAIA but without discussion of what industries, services, or operations are covered); *Rodrigue v. LeGros*, 563 So. 2d 248, 251-56 (La. 1990) (summarizing the LOAIA only to decide whether maritime law or the LOAIA should apply to an indemnity provision and concluding that the maritime law of indemnity applies).

The third case, *Fontenot v. Chevron U.S.A. Inc.*, 676 So. 2d 557 (La. 1996), is the only time *after* our court's decision in *Transcontinental Gas* that the Louisiana Supreme Court has discussed the LOAIA in any degree of detail. In *Fontenot*, the court addressed the applicability of the Act to a provision in a company's contract to provide "remedial well services" as well as drilling and workover operations on several of Chevron's platforms in the Gulf of Mexico. *Id.* at 559. The court explained the purpose of the LOAIA and then said: "To determine the applicability of Louisiana's Anti–Indemnity Act, courts have engaged in a two-step test," citing *Transcontinental Gas*. *Id.* at 564. "First," the court said, "there must be an agreement that 'pertains to' an oil, gas or water well." *Id.* "Second, the agreement must be related to exploration, development, production, or transportation of oil, gas, or water." As to the case before it, the parties' "contract for remedial well services" "passe[d] these two tests." *Id.*

*Fontenot* thus enshrines the "well" requirement in Louisiana law. But like our court's caselaw, it is silent as to whether an agreement for "drilling for minerals" must *also* pertain to a well.

No. 23-30076

Lower state courts in Louisiana have followed *Fontenot*'s guidance and applied the "well" requirement.[6] *E.g.*, *Palmour v. Gray Ins. Co.*, 731 So. 2d 911, 914 (La. Ct. App. 1999) (citing *Fontenot* and *Trancontinental Gas* and concluding that, even though one party was "in the business of performing oilfield work," the parties' "contract to rent a crane to be used in some unnamed purpose" was "not an oilfield, gas field or water related agreement and does not meet the 'pertains to' requirement"); *Rogers v. Integrated Expl. & Prod., LLC*, 265 So. 3d 880, 887-89 (La. Ct. App. 2019) (citing *Fontenot* and *Transcontinental Gas* and concluding that the LOAIA did not apply because the pipeline operations did not sufficiently pertain to a well). QBE cites no state case invoking the "drilling for minerals" clause in a way that avoids the "well" requirement. We have similarly located no such case. Accordingly, we find no "clear and controlling precedent" on this issue of Louisiana law. *Kling v. Hebert*, 60 F.4th 281, 285 (5th Cir. 2023) (citations omitted).

**3.**

To make an *Erie* guess is to "determine as best [we] can, what the highest court of the state would decide." *Transcon. Gas*, 953 F.2d at 988 (citations omitted). "In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citation omitted).

As the Louisiana Supreme Court has instructed, "[t]he starting point in the interpretation of any statute is the language of the statute itself, because what the legislature says in the text of a statute is considered the best

_____

[6] Our court is "not bound by state appellate court decisions," but "we will not disregard them 'unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Transcon. Gas*, 953 F.2d at 988 (citation omitted).

14

evidence of legislative intent." *Gulley v. Hope Youth Ranch*, 221 So. 3d 21, 26 (La. 2017) (citation omitted). Under article 9 of the Louisiana Civil Code, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE ANN. art. 9; *see also Kunath v. Gafford*, 330 So. 3d 161, 164 (La. 2021) ("[W]e must start with the language of the statute itself, interpreting the words used as they are generally understood; this court is bound to a strict interpretation of the plain language of the statutory provisions when the words of a statute are clear and unambiguous and the application of the law does not lead to absurd consequences.").

In maintaining the LOAIA does not require that an agreement pertain to a well, QBE points to the disjunctive "agreement" phrase in subsection (B) of the statute. Specifically, QBE contends that, when subsection (B) refers to "an agreement pertaining to a well for oil, gas, or water, or drilling for minerals," LA. STAT. ANN. § 9:2780(B), it enumerates two distinct, independent bases for the Act's application. QBE says that the statute covers, on the one hand, "agreements pertaining to a well for oil gas, or water," and on the other, "agreements pertaining to . . . drilling for minerals." The statute would thus be subdivided as follows: "an agreement pertaining to [1] a well for oil, gas, or water, or [2] drilling for minerals." It is only the latter that QBE invokes here—hence, no "well" nexus needed.

QBE's interpretation is the best construction of subsection (B). The use of "or" before "water" indicates that the disjunctive list of "oil, gas, or water," has concluded, and the subsequent comma followed by a second "or" in turn indicates that a new grammatical unit has been introduced. Read grammatically, subsection (B) provides that the LOAIA covers agreements pertaining *both* to oil, gas, or water wells, *and* to "drilling for minerals." The alternative reading—attaching "drilling for minerals" to

15

"wells"—creates an odd list of four items, the latter two of which are *both* preceded by "or." Specifically, the statute would read as follows: "an agreement pertaining to a well for [1] oil, [2] gas, or [3] water, or [4] drilling for minerals." This is an awkward and ungrammatical construction. The grammatical, plain-meaning reading is the one urged by QBE and left open in *Transcontinental Gas*.[7] *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012) (describing the "Grammar Canon" as requiring that "[w]ords are to be given the meaning that proper grammar and usage would assign them").

The phrase "agreement pertaining to a well for oil, gas, or water, or drilling for minerals" as used in subsection (B) is separately defined in subsection (C). The two subsections can be harmonized and, indeed, subsection (C) supports QBE's reading of (B). *See id.* at 180 (describing the "Harmonious-Reading Canon" as requiring that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory").

Subsection (C) provides:

C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to

---

[7] Notably, Texas's equivalent of the LOAIA ("the TOAIA") uses similar language but makes clearer that the "minerals" clause is distinct from the "wells" clause. Specifically, the TOAIA covers "an agreement pertaining to a well for oil, gas, or water or *to* a mine for a mineral." Tex. Civ. Prac. & Rem. Code Ann. § 127.003(a) (emphasis added).

> drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

LA. STAT. ANN. § 9:2780(C). Read carefully, subsection (C) sets out two distinct categories of exemplar "operations," corresponding to the two alternative LOAIA hooks enumerated in (B).

The beginning is straightforward. Subsection (C) starts by stating what "[t]he term 'agreement,' as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, *means* . . . ." *Id.* (emphasis added). That statutory phrase *means*—subsection (C) continues—"any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state . . . ." *Id.*

So far, this does not upset QBE's construction of subsection (B). The quoted language fairly accommodates "any agreement . . . concerning any operations related to . . . drilling for minerals." But subsection (C) goes on to list the types of "operations" the statute includes. This, too, must be harmonized with QBE's proffered reading of subsection (B).

Picking up where we paused, subsection (C) then says that the covered operations "includ[e] but [are] not limited to" the following:

> drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral . . . .

*Id.*

Compass contends that this list cannot be read without reference to "any well drilled." But Compass's reading is unpersuasive. This long list of activities is best read as being bifurcated after the word "producing." Starting at the beginning, the opening list of gerunds ("drilling, deepening, reworking," etc.) are all, in this context, transitive verbs—that is, they require an object. For example, it would be bizarre, if not ungrammatical, to list, as an exemplar "operation[]," the act of "altering." The grammatical—and logical—question becomes, "altering *what*?" *See Alter*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/alter (explaining that "alter" is a transitive verb and is only intransitive insofar as it means "to become different," as in, e.g., "customs that alter with the times"). The same is true for "deepening," "perforating," "plugging," and others. Each contemplates an object of the action. The object, of course, comes at the end of the list, when subsection (C) closes with the phrase "or otherwise rendering services in or in connection with *any well drilled* . . . ." La. Stat. Ann. § 9:2780(C) (emphasis added). The long list of verbs thus becomes readable: "drilling [any well], deepening [any well], reworking [any well], repairing [any well],"

or—enter the catch-all—"otherwise rendering services in or in connection with any well." *Id.*

The language after "any well" terminates the "well" clause and thus announces a *non-well-related* basis for the LOAIA's application. The statute provides that the "operations" include the above-listed activities done "in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral." *Id.*

Best read, the list detaches itself from "any well drilled" after the first verb, "producing." Most notably, grammatically, the word "producing" is followed by "or." This must mean that *something* starts anew. To be sure, "producing"—like the verbs in the long list just addressed—is most naturally read to require an object, and this interpretation deprives it of an object.[8] But here, ending the phrase at "or" is nonetheless plausible because the verb "producing," in the context of a well, is often used intransitively, without an object. *See, e.g.*, *Harrington v. Comm'r*, 404 F.2d 237, 239 (5th Cir. 1968) (assessing whether there was "proof that the well was producing during the taxable period in dispute"); David Ammons et al., Haynes & Boone, Shut-In & Cessation of Production: Current Considerations for Oil & Gas Producers 1 (May 18, 2020) (referring to "wells not . . . producing" and the legal concept of wells "producing in paying quantities").

_____

[8] Indeed, in the three other state OAIAs, the equivalent of this phrase has an object. All three contain some version of the phrase: "producing *or disposing of oil, gas or other minerals, or water.*" Wyo. Stat. Ann. § 30-1-132 (emphasis added); *see* N.M. Stat. Ann. § 56-7-2(B)(1); Tex. Civ. Prac. & Rem. Code Ann. § 127.001(4)(A)(i). In the LOAIA, though, no object ever comes.

The subsequent verbs—"excavating, constructing, improving, or otherwise rendering services in connection with"—are clearly transitive and *require* an object to complete the thought. It would be ungrammatical for the statute to cover, for example, the act of "improving." (Again, improving what?) But here, the statute completes itself, providing as its object "any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral." *Id.* With that phrase understood in its entirety, the list of verbs starting with "excavating" cannot reasonably be attached to a well, as they are not natural fits as "purpose[s]" of a well. For example, what is a "well drilled for the purpose of . . . improving . . . [a] mine shaft"?

Because subsection (C)'s list of operations terminates and then begins again after the word "producing," the exemplar operations can be divided into two broad categories. Read with reference to the rest of the statute, the first category pertains to "a well for oil, gas or water," and the second pertains to "drilling for minerals." Subsection (C) can thus be diagrammed as follows:

> The term "agreement," as it pertains to [1] a well for oil, gas, or water, or [2] drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to [1] the exploration, development, production, or transportation of oil, gas, or water, or [2] drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to[:]
>
> > [1]    drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing[;] *or*

No. 23-30076

> [2]    excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral . . . .

*Id.* (emphasis added).

Read this way—i.e., bifurcating subsection (C) into its two distinct, component parts—category [1] lists items that exemplify operations pertaining to "a well for oil, gas, or water," while category [2] lists items that exemplify operations pertaining to "drilling for minerals." The textual nexus to "any well drilled" is confined to category [1]. Category [2] makes no mention of a well, and in this way reinforces a disjunctive interpretation of subsection (B)'s reference to "an agreement pertaining to a well for oil, gas, or water, *or* drilling for minerals." *Id.* § 9:2780(B) (emphasis added).

This interpretation has the effect of harmonizing the LOAIA with the OAIAs of Texas and New Mexico.[9] It also conforms with the rule against surplusage. *See Pumphrey v. City of New Orleans*, 925 So. 2d 1202, 1210 (La. 2006) ("Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided."); Scalia & Garner, *supra*, at 174-79. If the entirety of subsection (C) were meant to describe only those operations involving a "well," then the "drilling for minerals" clause—textually distinct from "wells" in subsection (B)—would have no discernible

---

[9] Both Texas and New Mexico organize their OAIAs in this bifurcated way: operations regarding wells on the one hand, and operations regarding mine shafts on the other. *See* Tex. Civ. Prac. & Rem. Code Ann. § 127.001(1), (4)(A); N.M. Stat. Ann. § 56-7-2(B).

meaning. This bifurcated interpretation of subsection (C) gives effect to the two distinct clauses in (B).

In sum, the text of the LOAIA demands the interpretation that *Transcontinental Gas* left open long ago: An agreement that "pertain[s] to . . . drilling for minerals" need not also pertain to a well. LA. STAT. ANN. § 9:2780(B), (C); *see* LA. CIV. CODE ANN. art. 9.

## B.

Having concluded that the LOAIA does not contain a universal "well" requirement, we note that it remains an open question whether the agreements in this case, which governed fire-suppression and electrical work at a salt mine, are agreements "pertaining to . . . drilling for minerals." LA. STAT. ANN. § 9:2780(B), (C). Based on the record before us, we are unable to determine whether the agreements "pertain[] to . . . drilling for minerals." *Id.* Accordingly, we REMAND for further factfinding—including expert testimony, if helpful—as to the scope of Compass's agreements with FSS and MCE.

## IV.

The district court legally erred in holding that the LOAIA contains a universal "well" requirement. Accordingly, we REVERSE and REMAND to the district court to decide, in the first instance, whether the fire-suppression and electrical-work contracts at issue here "pertain[] to . . . drilling for minerals."